**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SHERRY SELMAN, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    **CIVIL ACTION 12-0441-WS-B** |
| | ) |
| CITIMORTGAGE, INC., *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on CitiMortgage, Inc.'s Partial Motion to Dismiss (doc. 16), Federal National Mortgage Association's Motion to Dismiss (doc. 37), and Motion of American Security Insurance Company to Dismiss (doc. 49).  All three motions have been briefed, and are now ripe for disposition.

**I.     Background.**

Plaintiffs, Sherry and Robert Selman, brought this action to air grievances concerning the servicing of the mortgage loan for their home in Daphne, Alabama.  Named defendants are CitiMortgage, Inc. (servicer of the Selmans' loan), Federal National Mortgage Association ("Fannie Mae," owner of the beneficial interest in the Selmans' loan), and American Security Insurance Company ("ASIC," the insurer with which CitiMortgage force-placed insurance coverage on the Selmans' residence for a five-month period commencing in September 2010).

Because all three Motions to Dismiss are properly classified as being brought pursuant to Rule 12(b)(6), Fed.R.Civ.P., the well-pleaded factual allegations of the Second Amended Complaint will be accepted as true for purposes of this Order, and the Court's review of the facts will generally be confined to the four corners of plaintiffs' pleading.[1]  Those allegations include

---

[1]     *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (on a motion to dismiss, federal court "accept[s] the facts alleged in the complaint as true, draw[s] all reasonable inferences in the plaintiff's favor, and limit[s] our review to the four corners of the complaint"); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's
(Continued)

the following:  The Selmans obtained a mortgage loan (the "Mortgage") in the amount of $159,000 for their principal residence in Daphne, Alabama on March 20, 2009.  (Doc. 45, ¶ 7.) The originating lender is not a party to this dispute.  After the closing, beneficial interest in the loan was transferred to Fannie Mae, and servicing duties were transferred to CitiMortgage.  (*Id.*, ¶ 9.)  CitiMortgage's obligations under the Mortgage included the responsibility to disburse periodic payments from the Selmans' escrow account for hazard insurance and property taxes when due.  (*Id.*, ¶ 20.)

In January 2010, the Selmans learned that CitiMortgage had failed to make their home insurance premium payment out of escrowed funds as required.  (*Id.*, ¶ 21.)  This omission occurred even though the Selmans had made all payments due under the Mortgage, including all escrow account funds for taxes and insurance.  (*Id.*, ¶ 22.)[2]  A short time later, the Selmans' homeowners' insurance policy lapsed because CitiMortgage had failed to remit the applicable premium out of available escrowed funds.  (*Id.*, ¶¶ 21-23.)  The Selmans' insurer (which is also not a party to this action) refused to reissue the lapsed policy without first evaluating the risk anew under its underwriting process, after which the insurer fixed much higher premiums and demanded expensive modifications and repairs.  (*Id.*, ¶ 24.)  On June 24, 2010, the carrier canceled the policy, leaving the Selmans to hunt for insurance coverage elsewhere.  (*Id.*)

Exercising its rights under Section 5 of the Mortgage, CitiMortgage force-placed hazard insurance on the Selmans' home from ASIC on September 1, 2010, via a policy that fixed coverage limits at $253,600 and bore an annual premium of $5,049.00.  (*Id.*, ¶¶ 27, 37.)  These

---

review on a motion to dismiss is limited to the four corners of the complaint.") (citation and internal quotation marks omitted); *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) ("a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true when it considers a motion to dismiss a complaint under Rule 12(b)(6)").

[2]    Of potential significance, plaintiffs allege only that they had timely made all payments due under the Mortgage as of January 26, 2010.  (*Id.*, ¶¶ 21-22.)  Conspicuously missing from their Second Amended Complaint is an allegation that the Selmans timely made all payments due under the Mortgage at all times through the commencement of foreclosure proceedings in March 2012.  In other words, the pleading does not reflect whether plaintiffs did or did not timely make all required payments under the Mortgage between January 2010 and March 2012.

policy limits were obtained by CitiMortgage, even though the amount of the Mortgage was just $159,000 and the tax-assessed value of the Selmans' home and lot combined was just $207,600. (*Id.*, ¶ 40.)  The Selmans impute a nefarious motive to this discrepancy.  In particular, plaintiffs allege that "a substantial portion of the premium" for the force-placed insurance "was retained or refunded to CitiMortgage in the form of kickbacks and/or 'commissions' paid to CitiMortgage by ASIC." (*Id.*, ¶ 27.)  Plaintiffs theorize that CitiMortgage intentionally obtained excessive force-placed coverage from ASIC for the Selmans' home, so as to maximize its own "kickbacks and/or commissions" out of the resulting premiums charged against the Selmans.  In any event, on February 2, 2011 (five months after the ASIC policy went into effect), the Selmans obtained new insurance coverage for the property, and CitiMortgage credited a portion of the force-placed insurance charge back to their account.  (*Id.*, ¶ 32.)

The Selmans' dissatisfactions with CitiMortgage and Fannie Mae extend well beyond the insurance issue.  Specifically, the Selmans contend that CitiMortgage failed to credit their regular mortgage payments properly, holding such payments in "suspense" rather than applying them to the Mortgage.  (*Id.*, ¶ 34.)  None of the Selmans' payments in the year 2012 were credited to their loan.  (*Id.*, ¶ 36.)  The problem came to a head on March 8, 2012, when "CitiMortgage commenced foreclosure on the Selmans' home." (*Id.*, ¶ 11.)  "In furtherance of the foreclosure process, CitiMortgage recorded an assignment from the originator of the Selmans' loan to itself on March 29, 2012." (*Id.*, ¶ 12.)  The Second Amended Complaint lacks any allegations, however, that CitiMortgage completed foreclosure proceedings on the Selmans' home, or that a foreclosure sale ever occurred.  There is no indication in the pleadings as to what, if anything, CitiMortgage did to "commence foreclosure" on plaintiffs' residence, nor is there any allegation that such process ever reached substantial completion.

After March 8, 2012, the Selmans made a series of demands and inquiries of CitiMortgage, all of which partially underlie certain claims in this litigation.  In particular, on March 19, 2012, the Selmans sent a notice of cancelation to CitiMortgage, purporting to rescind the Mortgage based on the original lender's failure to furnish the correct number of copies of certain TILA disclosures to the Selmans at the March 20, 2009 closing, and its alleged understatement of the finance charge by more than $35.00.  (*Id.*, ¶¶ 13-15.)  CitiMortgage failed and refused to recognize the rescission or cancel the Mortgage.  (*Id.*, ¶ 13.)  Also on March 19, 2012, the Selmans mailed a qualified written request ("QWR") to CitiMortgage, requesting

payoff and payment history data; however, CitiMortgage did not respond until June 21, 2012. (*Id.*, ¶¶ 50-51.)  On June 5, 2012, the Selmans made a second QWR to CitiMortgage concerning the escrow account balance; however, CitiMortgage did not respond.  (*Id.*, ¶ 52.)  The pleading alleges that CitiMortgage "failed to conduct any reasonable investigation or take any reasonable corrective actions in response to the Plaintiffs' [QWRs]."  (*Id.*, ¶ 53.)

On July 12, 2012, this dispute came to a head when the Selmans filed suit in this District Court.  The current iteration of the Complaint levels claims against CitiMortgage, Fannie Mae and ASIC, and asserts some 14 causes of action, to-wit: (i) negligence (Fannie Mae and CitiMortgage); (ii) wantonness (Fannie Mae and CitiMortgage); (iii) breach of mortgage agreement (CitiMortgage); (iv) wrongful foreclosure (CitiMortgage); (v) injunctive and declaratory relief (CitiMortgage); (vi) RESPA violations (CitiMortgage); (vii) breach of fiduciary duty (CitiMortgage); (viii) libel and slander (CitiMortgage); (ix) TILA rescission (CitiMortgage and Fannie Mae); (x) unjust enrichment (CitiMortgage and ASIC); (xi) conversion (CitiMortgage); (xii) fraud and conspiracy (all defendants); (xiii) violation of TILA § 1639f (CitiMortgage and Fannie Mae); and (xiv) FDCPA violations (CitiMortgage).

All three defendants have now moved to dismiss the Second Amended Complaint, in whole or in part.  In response to these Rule 12(b) Motions, the Selmans acknowledge that dismissal of their libel and slander (Count Eight) and fraud and conspiracy (Count Twelve) causes of action is appropriate under Rule 12(b)(6).[3]  Pursuant to this concession, then, the Motions to Dismiss are **granted** as to Counts Eight and Twelve, and those claims are **dismissed**. Moreover, review of the Rule 12(b) Motions confirms that no defendant seeks dismissal of the FDCPA claim (Count Fourteen), the portions of the breach of mortgage agreement (Count Three) or injunctive/declaratory relief (Count Five) claims that do <u>not</u> concern force-placed insurance, or the portion of the RESPA claim (Count Six) alleging violation of 12 U.S.C. § 2605(g).  Accordingly, this action will proceed against CitiMortgage with respect to those four causes of action, irrespective of how the Motions to Dismiss are adjudicated.  As to all remaining causes of action, however, the parties sharply dispute whether such claims are legally cognizable as pleaded in the Second Amended Complaint.

---

[3]     *See* doc. 53, at 3 ("Plaintiffs concede that, at this time, counts eight and twelve of the SAC do not state a claim as presently pled.").

## II.    Analysis.

### A.    Plaintiffs' Claims Relating to Force-Placed Insurance.

As an initial matter, both CitiMortgage and Fannie Mae move for dismissal of all of the Selmans' causes of action insofar as they relate to the force-placing of hazard insurance by CitiMortgage.[4]  According to CitiMortgage and Fannie Mae, these claims are preempted by operation of the National Banking Act.  Authorities cited in movants' briefs lend credence to this proposition.

The Supreme Court has explained that "[b]usiness activities of national banks are controlled by the National Bank Act (NBA or Act), 12 U.S.C. § 1 *et seq.*, and regulations promulgated thereunder."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007).  The NBA "specifically authorizes federally chartered banks to engage in real estate lending" and empowers them "to exercise … all such incidental powers as shall be necessary to carry on the business of banking."  *Id.*  Regulations accompanying the Act specify that "[a] national bank may charge its customers non-interest charges and fees," and that "[t]he establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles …."  12 C.F.R. § 7.4002(a), (b)(2).

Given the Act's broad regulation of national banks, the NBA preempts state laws that "prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers."  *Watters*, 550 U.S. at 12.  Such preemption applies even to state laws of general application that were not designed to regulate the preempted areas.  *See Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012) (in analyzing preemption, courts apply state laws of general application to national banks only when "doing so does not prevent or

---

[4]     This issue is not confined in a single claim or cause of action, but is instead a recurring theme throughout the Second Amended Complaint.  Indeed, plaintiffs' assertion that defendants engaged in wrongdoing by force-placing hazard insurance in excessive coverage amounts for plaintiffs' home is sprinkled throughout the Selmans' 14 asserted causes of action as part (but not all) of the legal and factual basis for each of those claims.  Specifically, the force-placed insurance issue seeps into Count One (negligence), Count Two (wantonness / willfulness), Count Three (breach of the mortgage agreement), Count Four (wrongful foreclosure), Count Five (injunctive/declaratory relief), Count Ten (unjust enrichment), and Count Twelve (fraud/conspiracy).

significantly interfere with the national bank's exercise of its powers") (citations omitted).  In addition to authorizing national banks to establish non-interest fees and charges as business decisions in their discretion, the NBA creates preemption for state-law restrictions on "[t]he ability of a creditor to require or obtain private mortgage insurance, ***insurance for other collateral***, or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices" or "[t]he terms of credit."  12 C.F.R. § 34.4(a)(2), (4) (emphasis added).

CitiMortgage and Fannie Mae maintain that the Selmans' state-law claims directed at the force-placement of hazard insurance on the Selmans' home constitute improper interference with CitiMortgage's authority under the NBA to require or obtain insurance for its collateral and fix the terms of credit in its discretion, according to sound banking judgment.  The crux of this argument is that the Selmans' state-law claims are preempted because they seek to constrain or undermine CitiMortgage's right pursuant to the NBA to establish the type and amount of non-interest charges and fees under § 7.4002.  In this regard, defendants liken the Selmans' insurance-related claims to those at issue in *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549 (9th Cir. 2010), in which the plaintiffs argued that certain fees charged by the lender "are too high, and ask[ed] the court to decide how much an appropriate fee would be."  *Id.* at 556.  Because regulations under the NRA provide that the amounts of such fees "are business decisions to be made by each bank," the plaintiffs' claims were "preempted by the Act."  *Id.* According to CitiMortgage, this case is akin to *Martinez*, in that the Selmans' insurance-related claims essentially posit that CitiMortgage required too much insurance on the Selmans' collateral at too high a price, thereby running directly into the NRA preemption just as occurred in *Martinez*.  To bolster their preemption argument further, CitiMortgage and Fannie Mae point to case law and regulations under the Home Owners' Loan Act, which they contend to be similar and to have reached the same conclusion about preemption in the force-placed insurance context.

In response, plaintiffs do not challenge CitiMortgage's and Fannie Mae's interpretation of the breadth, scope and effect of NBA preemption.  They do not dispute that their insurance-related claims under state law would indeed be preempted by the Act if they were brought against a national bank.  Rather, the Selmans' sole rejoinder to movants' preemption argument is that CitiMortgage is a subsidiary of a national bank, not a national bank itself.   The distinction matters, according to the Selmans, because the Dodd-Frank Act amended the NBA to "eliminate[] preemption of state law for national bank subsidiaries, agents and affiliates."  (Doc.

53, at 7 (citation omitted).)  Simply put, plaintiffs' position is that "[s]ince CitiMortgage is not a bank it is not entitled to preemption" (*id.* at 8) in the wake of the Dodd-Frank Act.

The Selmans' argument fails for the straightforward reason that (i) it hinges exclusively on the terms of the Dodd-Frank Act, but (ii) the Dodd-Frank Act's preemption clarifications relating to national bank subsidiaries such as CitiMortgage postdate relevant events in this litigation and are not retroactive.  *See, e.g., Molosky v. Washington Mut., Inc.*, 664 F.3d 109, 113 n.1 (6th Cir. 2011) ("The Dodd-Frank Act itself declares that its contents should not be construed as retroactive."); *Davis v. World Savings Bank, FSB*, 806 F. Supp.2d 159, 166 n.5 (D.D.C. 2011) ("Congress did not direct retroactive application of the new regulation, and the Dodd-Frank Act provided that section 1465 of Title 12 was enacted and amended effective on the transfer date, *i.e.* July 21, 2011.").  The Supreme Court has directed that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).  Here the relevant administrative interpretation states the opposite, by plaintiffs' own reckoning.  Indeed, the Comptroller of the Currency Interpretive Letter #1132 dated May 12, 2011, on which the Selmans rely and which they append to their brief, specifies that the Dodd-Frank Act "eliminates preemption of state law for national bank subsidiaries" with such change becoming "effective as of the 'transfer date' (July 21, 2011)."  (Doc. 53, Exh. 2, at 1.)

In sum, then, the Dodd-Frank Act did modify CitiMortgage's status with respect to NBA preemption, but that change took effect on July 21, 2011, and was not retroactive.  These truths are fatal to the Selmans' argument that the Dodd-Frank Act renders NBA preemption unavailable to CitiMortgage in this case.  After all, the Selmans' insurance-related claims relate to CitiMortgage's force-placement of insurance on the Selmans' home from September 1, 2010 through February 2, 2011, well before the Dodd-Frank Act's July 2011 "transfer date."  (*See* doc. 53, ¶¶ 27-32.)  As such, CitiMortgage's subsidiary status in no way deprives of it of the benefit of NBA preemption in this action.[5]  Plaintiffs identify no other reasons or grounds why this

---

[5]        Indeed, the applicable regulation during the time period at issue in this case provided as follows:  "Unless otherwise provided by Federal law or OCC regulation, State laws apply to national bank subsidiaries to the same extent that those laws apply to the parent national bank."  12 C.F.R. § 7.4006 (removed and reserved July 21, 2011).

Court should not deem the Selmans' state-law claims related to force-placement of insurance to be preempted under the National Bank Act.

In light of the foregoing analysis, the Motions to Dismiss are **granted**, and plaintiffs' claims are **dismissed**, insofar as the Selmans seek to bring state-law claims challenging CitiMortgage's conduct of obtaining force-placed insurance for the Selmans' residence in an amount that plaintiffs contend was excessive or in some way motivated by a desire to maximize kickbacks or commissions. Those claims are **preempted** by the National Bank Act and cannot be pursued herein.

### B.    *Plaintiffs' Negligence/Wantonness Claims (Counts I and II).*

In Counts One and Two of the Second Amended Complaint, the Selmans bring Alabama common-law negligence and wantonness claims, reasoning that CitiMortgage has been negligent and wanton "in the managing and servicing of Plaintiffs' mortgage account." (Doc. 45, ¶¶ 56, 61.) Plaintiffs allege that Fannie Mae is also liable for these claims because CitiMortgage was acting as its agent. (*Id.*, ¶¶ 59, 62.)

These claims fail as a matter of law. Recent federal precedent interpreting Alabama law has uniformly found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law, at least in the absence of personal injury or property damage (neither of which are alleged by the Selmans).[6] *See, e.g., Blake v. Bank of America, N.A.*, 845 F. Supp.2d 1206, 1210-11 (M.D. Ala. 2012) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing"); *Webb v. Ocwen Loan Servicing, LLC*, 2012 WL 5906729, *7 (S.D. Ala. Nov. 26, 2012) ("under Alabama law a cause of action for negligent servicing of a mortgage against Ocwen cannot be maintained where the damages are economic, *i.e.*, lost commissions"); *Forester v. Bank of America, N.A.*, 2012 WL 3206471, *5 (S.D. Ala. Aug. 7, 2012) ("Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the

---

[6]    To be sure, the Selmans do claim to have suffered mental anguish and emotional distress as a result of CitiMortgage's negligence. But Alabama law forbids "[d]amages for mental anguish … for negligence except when the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct." *Brown v. First Federal Bank*, 95 So.3d 803, 818 (Ala.Civ.App. 2012). Plaintiffs' allegations do not satisfy this threshold.

duty of reasonable care. Pure economic loss – which is what [Forester] claims – does not suffice.") (citations omitted); *Fassina v. CitiMortgage, Inc.*, 2012 WL 2577608, *7 (N.D. Ala. July 2, 2012) ("Plaintiff's claim alleging negligent, reckless, and/or wanton mortgage servicing is not valid under Alabama law."); *McClung v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 1642209, *8 (N.D. Ala. May 7, 2012) ("the court similarly concludes that there is no cause of action for negligent or wanton mortgage servicing under Alabama law").[7] All of these cases reject the availability of negligence or wantonness claims under Alabama law under comparable circumstances to those identified by the Selmans.

The Court agrees with these decisions' construction of Alabama law, and particularly their emphasis that the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public. *See generally Barber v. Business Products Center, Inc.*, 677 So.2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"), *overruled on other grounds by White Sands Group, LLC v. PRS II, LLC*, 32 So.3d 5 (Ala. 2009); *Temploy, Inc. v. National Council on Compensation Ins.*, 650 F. Supp.2d 1145, 1153 (S.D. Ala. 2009) ("The general rule in Alabama is that the mere failure to perform a contractual obligation will not sustain an action sounding in tort."). To the

---

[7]       Plaintiffs' argument to the contrary relies on *Marks v. Quicken Loans, Inc.*, 561 F. Supp.2d 1259 (S.D. Ala. 2008), in which this Court concluded that a loan servicer did owe a duty of care to a borrower. *Marks* is distinguishable because the servicer in that case did not argue that Alabama law imposes no general duty of care on loan servicers, but instead argued "that it could not have owed a duty to the Markses to pay the insurance premiums out of their escrow account by the March 31, 2007 deadline … because it had surrendered all control and custody over their escrowed funds well before that time." *Id.* at 1267. Federal district courts generally do not volunteer arguments on parties' behalf, but instead decide the questions presented to them in the manner the parties choose to frame them. Thus, in *Marks*, this Court had no occasion to make a definitive determination about whether, as a general matter, Alabama law recognizes a duty of care running from loan servicers to borrowers because no argument was presented in that case disclaiming such a general duty of care. What's more, *Marks* is distinguishable by virtue of its unusual fact pattern. The servicer in *Marks* allegedly received an insurer's bill for the borrower's hazard insurance premium, failed to pay that bill, transferred its interest in the loan to another entity, and neglected to inform either the new servicer of the unpaid bill or the insurer of the existence of a new servicer. *See id.* at 1267. That specialized scenario is a far cry from the generic servicer-to-borrower duty of care at issue in this case; therefore, the highly fact-bound rule in *Marks* has no application here.

extent, then, that the Selmans seek to derive tort claims of negligence and wantonness to recover economic loss (no physical injuries) stemming from CitiMortgage's purported failure to perform contractual duties vis a vis the servicing of their mortgage, the Court agrees with defendants that Counts One and Two do not state claims upon which relief can be granted.

      Embedded in Count One is a subclaim that CitiMortgage "failed to properly train and supervise its agents and employees and this failure has caused or contributed to the plaintiffs' damages herein."  (Doc. 45, ¶ 57.)  In Rule 12(b) briefing, the Selmans suggest that they have stated an actionable claim for negligent training and supervision.  Under Alabama law, such a claim requires a showing that "(1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence; and (3) the employer failed to respond to this notice adequately."  *Lawrence v. Christian Mission Center Inc. of Enterprise*, 780 F. Supp.2d 1209, 1218 (M.D. Ala. 2011); *see also Crutcher v. Vickers*, 2012 WL 3860557, *13 (N.D. Ala. Sept. 5, 2012) (explaining that a critical element of either negligent supervision or negligent training under Alabama law is "proof of the employer's actual or constructive awareness of the employee's incompetency").  The Selmans have alleged facts that would support none of these elements (especially with regard to the elements of notice and failure to respond); rather, Count One of their Second Amended Complaint simply makes a conclusory, unsubstantiated allegation of negligent training and supervision.  That is not good enough to withstand Rule 12(b)(6) scrutiny.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ] their claims across the line from conceivable to plausible"); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (*Twombly / Iqbal* pleading standard "necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim").

      As presently constituted, then, Counts I and II (including both the claims of negligent/ wanton servicing of plaintiffs' mortgage account and the subsidiary claims of negligent/ wanton training or supervision) fail to state a claim upon which relief can be granted and are properly **dismissed**.

## C.    *Plaintiffs' Wrongful Foreclosure Claim (Count IV).*

Count Four of the Second Amended Complaint is the Selmans' claim against CitiMortgage for wrongful foreclosure.  In support of this cause of action, plaintiffs allege that "CitiMortgage has breached the mortgage and note by … instituting foreclosure proceedings in the absence of a default by Plaintiffs."  (Doc. 45, ¶ 67.)  Plaintiffs do not allege, however, that CitiMortgage foreclosed on their residence, or that CitiMortgage actually exercised its power of sale.  Instead, the pleading is couched in terms that "CitiMortgage commenced foreclosure on the Selmans' home" in March 2012 and that plaintiffs are "subjected to … possible foreclosure" today.  (*Id.*, ¶¶ 11, 73.)  By the plain terms of the Complaint, then, foreclosure has not happened.

CitiMortgage now seeks dismissal of this claim on the ground that no cause of action for wrongful foreclosure is cognizable without a foreclosure.  "Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage." *Jackson v. Wells Fargo Bank, N.A.*, 90 So.3d 168, 171 (Ala. 2012) (claim for wrongful disclosure is defined as one in which "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor") (citation omitted); *see also Reeves Cedarhurst Development Corp. v. First American Federal Sav. and Loan Ass'n*, 607 So.2d 180, 182 (Ala. 1992) ("A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.").  The touchstone of such a claim is that the mortgagee must "use[] the power of sale." *Reeves*, 607 So.2d at 182.  This requirement implies that a foreclosure sale must have occurred in order for a wrongful foreclosure claim to lie under Alabama law.  Courts applying Alabama law have routinely so found.  *See, e.g., Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391, *6 (S.D. Ala. Jan. 18, 2007) (under Alabama law, "the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling," and "the clear weight of authority from other jurisdictions is that wrongful foreclosure actions are not recognized unless a foreclosure actually takes place").[8]

---

[8]      *See also Webb*, 2012 WL 5906729, at *5 ("since no foreclosure sale occurred, defendants did not use the power of sale and Webb cannot meet this threshold requirement," such that wrongful foreclosure claim was dismissed); *Forester*, 2012 WL 3206471, at *4 ("As Forester has merely alleged that foreclosure proceedings have been initiated, but … no sale has taken place, Forester's wrongful foreclosure claim (Count One) falls shy of the *Reeves* (Continued)

To counter these persuasive authorities, plaintiffs point to *Sturdivant v. BAC Home Loans Servicing, LP*, --- So.3d ----, 2011 WL 6275697 (Ala.Civ.App. Dec. 16, 2011).  But *Sturdivant* was an ejectment action, in which no claim for wrongful foreclosure was asserted by anyone. The Alabama appellate court in *Sturdivant* had no occasion to delineate the extent to which a mortgagee must exercise the power of sale in order for a wrongful foreclosure claim to be cognizable.  Although *Sturdivant* is instructive as to whether a deed obtained by foreclosure sale is valid when the mortgagee lacked authority to foreclose, it says nothing about the scope and parameters of a cause of action for wrongful foreclosure under Alabama law.[9]

Separate and apart from the non-occurrence of a foreclosure sale, CitiMortgage argues that Count Four is legally deficient because it does not allege that CitiMortgage initiated foreclosure proceedings for any purpose other than to secure the Selmans' debt.  Alabama law is crystal clear that a wrongful foreclosure action lies only where the power of sale is exercised for an improper purpose.  *See Jackson*, 90 So.3d at 172 (upholding dismissal of plaintiffs' wrongful-foreclosure claim where plaintiffs did not allege that power of sale was exercised for any purpose other than to secure their debt); *In re Sharpe*, 391 B.R. 117, 153 (Bankr. N.D. Ala. 2008) ("Under Alabama law, if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure."); *Ford v. Central Loan Admin.*, 2011 WL 4702912, *5 (S.D. Ala. Oct. 5, 2011) (dismissing wrongful foreclosure cause of action where complaint established that "plaintiff does not know whether a foreclosure sale has taken place" and "says nothing about

---

threshold.") (footnote omitted); *McClung*, 2012 WL 1642209, at *4 ("To state a claim for wrongful foreclosure, a foreclosure sale must have actually taken place; merely scheduling a foreclosure sale is not sufficient.").

[9]     The other case on which plaintiffs rely, *Matthews v. Alaska Seaboard Partners Ltd, Partnership*, 2006 WL 2686932, *6 (S.D. Ala. Sept. 19, 2006), is unavailing because (i) the quoted excerpt is pure *dicta*; (ii) *Matthews* did not purport to make a definitive statement about the elements of wrongful foreclosure under Alabama law, but instead offered an off-the-cuff observation about what "the law in Alabama appears" to be; (iii) the movant in *Matthews* cited no authority for the proposition that completion of foreclosure is necessary to sustain a cause of action for wrongful foreclosure; and (iv) the argument that no foreclosure sale had occurred was presented in a reply brief and therefore deemed improper on that basis.  In short, *Matthews* is far too slender a reed to support plaintiffs' position here.

any improper purpose, ill motive, or action outside the boundaries of the applicable contract"). Both plaintiffs' brief and their Second Amended Complaint are silent on this point.

In short, because plaintiffs' pleading reveals that no foreclosure sale occurred and imputes no improper motive to CitiMortgage for conducting any such foreclosure (had a sale taken place), Count Four does not state a cognizable claim for wrongful foreclosure under Alabama law.  CitiMortgage's Motion to Dismiss is **granted** as to that claim.

### D.     Plaintiffs' RESPA Claim (Count VI).

In Count Six of the Second Amended Complaint, the Selmans allege that CitiMortgage ran afoul of the Real Estate Settlement Procedures Act ("RESPA") in two respects.  First, plaintiffs contend that CitiMortgage violated 12 U.S.C. § 2605(g) by failing properly to manage their escrow account.  Second, they allege that CitiMortgage violated 12 U.S.C. § 2605(e) by failing timely to respond to plaintiffs' qualified written requests ("QWRs").  CitiMortgage has moved for dismissal of the § 2605(e) claim, but not the § 2605(g) claim.

Section 2605(e) requires a servicer of a federally related mortgage loan to provide a written response to a borrower's QWR, acknowledging receipt of the request, within 20 days, and to take further action or provide explanation or clarification within 60 days.  12 U.S.C. § 2605(e)(1)(A), (2).  "A borrower may recover 'actual damages' if the loan servicer fails to comply with these provisions."  *Sellers v. GMAC Mortg. Group, Inc.*, 2008 WL 4768867, *2 (11th Cir. Nov. 3, 2008).  A borrower's recovery is not limited to actual damages; rather, the statute provides for award of "an amount equal to the sum of … any actual damages to the borrower as a result of the failure; and … any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."  12 U.S.C. § 2605(f)(1)(A)-(B).

As CitiMortgage correctly points out, the trouble with the Selmans' § 2605(e) claim is that it adequately alleges neither actual damages nor a "pattern or practice of noncompliance" sufficient to support eligibility for statutory damages under § 2605(f).[10]  The Selmans contend,

---

[10]     The Court recognizes the existence of authority bolstering CitiMortgage's contention that proof of actual damages is mandatory to recover on a § 2605(e) violation, and that a § 2605(e) claim cannot stand on statutory damages alone.  *See, e.g., Ford v. New Century Mortg. Corp.*, 797 F. Supp.2d 862, 870 (N.D. Ohio 2011) ("remedies for violations of § 2605(e) are conditioned upon actual damages to the borrower," such that "to state a plausible claim the (Continued)

without explanation or elaboration, that they have alleged actual damages related to the RESPA violations in paragraphs 35 and 54 of the Second Amended Complaint.  (Doc. 53, at 13.)  Inspection of those allegations reveals otherwise.  Paragraph 35 states only that CitiMortgage is holding payments and "has continued to report negative information to credit bureaus about the account," without linking these facts to either (i) actual damages suffered by the Selmans, or (ii) CitiMortgage's failure to respond to QWRs made in March 2012 and June 2012.  (Doc. 45, ¶ 35.)  Meanwhile, paragraph 54 states in generic terms that "[a]s a result of CitiMortgage's actions and inactions as alleged herein plaintiffs have been caused to pay more for homeowners insurance, incurred the cost of the insurance forced placed by CitiMortgage, suffered damage to their credit rating, mental anguish and mental distress."  (*Id.*, ¶ 54.)  The Second Amended Complaint does not connect any of these broad allegations (several of which predate the QWRs) to the alleged § 2605(e) violation, or in any way identify or suggest a direct relationship between the two.

These allegations are insufficient to state a claim under RESPA.  After all, § 2605(f)(1) authorizes only "actual damages to the borrower as a result of the failure" to respond to the QWR; therefore, the borrower's actual damages must flow directly from the servicer's lack of timely response in order to be cognizable.  *See Lal v. American Home Servicing, Inc.*, 680 F. Supp.2d 1218, 1223 (E.D. Cal. 2010) ("allegations made under a separate cause of action are insufficient to sustain a RESPA claim for actual damages as they are not a direct result of the failure to comply").[11]  The Selmans have alleged no actual damages that are directly related to

---

plaintiff must allege actual damages arising from the violation"); *but see Echeverria v. BAC Home Loans Servicing, LP*, --- F. Supp.2d ----, 2012 WL 5227015, *6 (M.D. Fla. Oct.  22, 2012) (considering on the merits a RESPA claim that "Plaintiffs have limited … to one for statutory damages").  This issue need not be decided here, however, because the Second Amended Complaint does not state an adequate factual predicate to support even a claim for statutory damages.

[11]     *See also Marais v. Chase Home Finance, LLC*, 2012 WL 4475766, *6 (S.D. Ohio Sept. 26, 2012) ("actual damages must be pled as part of any RESPA claim," and "any alleged loss must clearly be related to the RESPA violation itself"); *Dietz v. Beneficial Loan and Thrift Co.*, 2011 WL 2412738, *5 (D. Minn. June 10, 2011) (dismissing RESPA claim where "the Second Amended Complaint fails to state facts that would show that any damage to Plaintiffs was attributable to Defendants' lack of response"); *Claxton v. Orlans Associates, P.C.*, 2010 WL 3385530, *5 (E.D. Mich. Aug. 26, 2010) (dismissing § 2605(e) claim where complaint did not (Continued)

CitiMortgage's alleged untimely and/or inadequate response to their QWRs.  Accordingly, they have not made a sufficient showing to state a plausible claim for relief under § 2605(e).

Nor do the Selmans save their § 2605(e) claim by obliquely stating that CitiMortgage has a "pattern and practice of improperly supervising and training its employees," which has caused or allowed them to "mak[e] delinquent responses to qualified written requests from consumers." (Doc. 45, ¶ 81.)  "To seek statutory damages under § 2605, Plaintiff must allege facts showing that there is a pattern or practice of noncompliance with the requirements of the section." *Correa v. BAC Home Loans Servicing LP*, 2012 WL 1176701, *8 (M.D. Fla. Apr. 9, 2012). Merely mouthing the buzzwords "pattern and practice" in a complaint does not satisfy minimum pleading requirements because it represents a legal conclusion, and such conclusory labels are not credited for Rule 12(b)(6) purposes.  *See, e.g., Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("if allegations are indeed more conclusory than factual, then the court does not have to assume their truth"); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").  A conclusory statement of a pattern or practice is just the kind of legal conclusion that fails to pass muster under *Twombly* / *Iqbal* principles.[12]

Finally, plaintiffs' suggestion that the Second Amended Complaint adequately alleges a pattern and practice by referring to two instances in which CitiMortgage failed timely to respond to QWRs is legally infirm.  "Though there is no magic number of violations that create a 'pattern

---

allege "that Plaintiffs incurred any actual damages as a result of Bank of America's alleged failure to timely or adequately respond to their QWR").

[12]     *See Lal*, 680 F. Supp.2d at 1223 (E.D. Cal. 2010) (rejecting as a "stock legal conclusion" the plaintiffs' § 2605(e) claim where they "flatly claim a pattern of noncompliance but state no facts" in support of same); *Gilmore v. American Mortg. Network*, 2012 WL 6193843, *6 (C.D. Cal. Dec. 10, 2012) (dismissing plaintiff's RESPA claim where "plaintiff fails to allege any facts, beyond his legal conclusion" of a pattern or practice of noncompliance); *Davis v. Greenpoint Mortg. Funding, Inc.*, 2011 WL 7070222, *5 (N.D. Ga. Sept. 19, 2011) (conclusory allegations that defendant "has made it a practice" not to comply with QWRs, coupled with a single failure to respond, "are conclusory and are insufficient to permit the 'pattern or practice' claim for statutory damages to survive the motion to dismiss"); *Dietz*, 2011 WL 2412738, at *5 n.4 (plaintiffs' RESPA claim was not bolstered by "pattern or practice" allegations where "Plaintiffs' allegations regarding a pattern or practice are wholly conclusory and insufficient to state a cause of action").

or practice of noncompliance,' courts have held that two violations of RESPA are insufficient to support a claim for statutory damages." *Kapsis v. American Home Mortg. Servicing Inc.*, --- F. Supp.2d ----, 2013 WL 544010, *13 (E.D.N.Y. Feb. 14, 2013); *see also McLean v. GMAC Mortg. Corp.*, 595 F. Supp.2d 1360, 1365-66 (S.D. Fla. 2009) (two violations of RESPA's QWR requirements are insufficient to support a pattern a pattern or practice of noncompliance under § 2605(f)).

For all of the foregoing reasons, the Court agrees with CitiMortgage that the § 2605(e) portion of Count Six fails to state a claim on which relief can be granted and is therefore properly **dismissed**. That said, plaintiffs will be permitted to proceed as to the portion of Count Six alleging a violation of 12 U.S.C. § 2605(g).

### E.   *Plaintiffs' Breach of Fiduciary Duty Claim (Count VII).*

The Selmans' seventh claim for relief sounds in a common-law theory of breach of fiduciary duty. The Second Amended Complaint alleges that "CitiMortgage owes Plaintiffs an implied fiduciary duty of fairness and good faith as to all aspects [of] handling the plaintiffs' monies and the servicing of the mortgage agreement," and that CitiMortgage breached this duty by mismanaging the Selmans' account and instituting foreclosure proceedings. (Doc. 45, ¶¶ 83-84). CitiMortgage now moves for dismissal of Count Seven on the ground that it owes no fiduciary duty to the Selmans under Alabama law.

CitiMortgage's position relies on a substantial, unbroken line of authority supporting the proposition that Alabama law does not recognize a general fiduciary duty running from a mortgagee to a mortgagor. *See, e.g., Forester v. Bank of America, N.A.*, 2012 WL 3206471, *8 (S.D. Ala. Aug. 7, 2012) ("Alabama law does not recognize a general fiduciary duty owed by a mortgagee, like BAC, to a mortgagor, like Forester, by virtue of the mortgagee extending a mortgage loan").[13] Plaintiffs identify no Alabama authorities deviating from this rule. More

---

[13]      *See also Brabham v. American Nat'l Bank of Union Springs*, 689 So.2d 82, 88 (Ala.Civ.App. 1996) ("The gist of the Brabhams' argument is that the supreme court has tacitly recognized that a mortgagee owes a fiduciary duty to a mortgagor. We do not agree."); *Hundley v. Green Tree Servicing, LLC*, 2013 WL 365600, *6 (N.D. Ala. Jan. 24, 2013) ("Under Alabama law, no fiduciary relationship exists between a mortgagee and mortgagor."); *Shewmake v. Anderson*, 2012 WL 5378942, *5 (N.D. Ala. Oct. 30, 2012) ("Under Alabama law, the relationship of a lender to a borrower generally does not impose a fiduciary duty on the lender. … This general rule also applies to the relationship between a mortgagee and mortgagor") (Continued)

importantly, they offer no rationale why Alabama law would treat mortgage servicers differently than mortgagees for purposes of this principle.  The Selmans advance no facts showing any kind of special relationship between them and CitiMortgage, much less any legal authority or persuasive reason to believe that Alabama law would impute a fiduciary duty to a loan servicer such as CitiMortgage even as it steadfastly refuses to impose such a duty on a mortgagee.  Abundant authority from across the country is to the contrary.[14]

In arguing otherwise, plaintiffs assemble a hodgepodge of cases in which courts in specific circumstances have found that an escrow agent may have a fiduciary duty to parties to an escrow account.  None of those authorities appear to have arisen in a mortgage loan servicer context.  That special relationships yielding a fiduciary duty may arise in conjunction with particular arrangements in which an entity holds funds for the benefit of another in no way supports a general rule (contradicted by the numerous authorities set forth *supra*) that mortgage servicers owe fiduciary duties to mortgagors as a matter of course.  For example, plaintiffs point

---

(citations omitted); *In re Small*, 2012 WL 2132386, *6 (Bankr. S.D. Ala. June 12, 2012) ("Alabama law does not recognize a general fiduciary duty owed by a mortgagee to a mortgagor.").

[14]     *See, e.g., Leal v. Bank of New York Mellon*, 2012 WL 5465978, *14 (S.D. Tex. Oct. 22, 2012) ("a mortgage servicer owes no fiduciary duty to its clients"); *Menlove v. Bank of America N.A.*, 2012 WL 4356367, *3 (D. Utah Sept. 24, 2012) ("To the extent Plaintiffs allege Defendants owed them a fiduciary duty merely because of their status as a loan servicer or lender, such claim fails as a matter of law."); *Goyal v. Capital One, N.A.*, 2012 WL 3878114, *2 (N.D. Cal. Sept. 6, 2012) ("courts have held that loan services [*sic*] have no fiduciary duty when their involvement does not exceed their conventional role as a loan servicer"); *Aguilar v. Investaid Corp.*, 2012 WL 2590356, *6 (D. Nev. July 3, 2012) ("this claim fails on its face because it is well-settled that lenders and servicers owe no fiduciary duties to mortgage borrowers"); *Jean v. American Home Mortg. Servicing, Inc.*, 2012 WL 1110090, *4 (N.D. Ga. Mar. 30, 2012) ("No rational trier of fact could find that Defendant, as a loan servicer and agent for the owner of the Loan, owed Plaintiff any fiduciary duty and it did not owe her a fiduciary duty as a matter of law."); *Breedlove v. Wells Fargo Bank, N.A.*, 2010 WL 3000012, *2 (D. Ariz. July 28, 2010) ("It is well-settled in Arizona that neither a mortgage lender nor its servicer owes a fiduciary duty to borrowers."); *Corcoran v. Saxon Mortg. Services, Inc.*, 2010 WL 2106179, *4 (D. Mass. May 24, 2010) ("under Massachusetts law, neither a mortgage holder nor its servicer owes a fiduciary duty to a borrower"); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, 2009 WL 855648, *10 (S.D.N.Y. Mar. 25, 2009) (defendant's "role as servicer and holder of the mortgage notes did not create fiduciary duties to plaintiffs for it").

to *Green Tree Acceptance, Inc. v. Tunstall*, 645 So.2d 1384 (Ala. 1994), but that case is obviously distinguishable on its facts.  In *Tunstall*, a mobile home lender received and set aside specific funds in the amount of $1,200 earmarked for installation of a heater and air conditioner for the mobile home; however, the lender never told the purchaser that it had the funds, never delivered the funds to him, and never purchased or installed the air conditioning unit.  Under those specific, unusual circumstances, the Alabama Supreme Court opined that "[a] jury could find that, by withholding the $1200 to ensure that the heating and air conditioning system was installed, Green Tree created a trust in that amount and imposed on itself a duty to act for Tunstall's benefit."  *Id.* at 1387.  Nothing in *Tunstall* suggests that its holding is generally transferable to the run-of-the-mill mortgage loan servicer context, or that the court intended to create broad fiduciary duties in the loan context extending beyond the narrowly circumscribed factual circumstances before it.

For all of the foregoing reasons, the Court agrees with CitiMortgage that Count Seven fails to state a cognizable claim for breach of fiduciary duty under Alabama law, inasmuch as no fiduciary relationship exists between mortgagees and mortgagors under Alabama law, numerous courts around the country have extended this principle to embrace mortgage servicers, and plaintiffs identify no circumstances here that might give rise to a special relationship of trust and confidence, rather than a conventional loan servicer / borrower relationship, between themselves and CitiMortgage.  Count Seven does not state a claim and will be **dismissed**.

### F.       Plaintiffs' TILA Rescission Claim (Count IX).

Count Nine of the Second Amended Complaint is a statutory claim for rescission of the Mortgage.  The Truth in Lending Act ("TILA") provides that, in any consumer credit transaction in which the borrower provides a security interest in his principal dwelling, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later."  15 U.S.C. § 1635(a).  The Selmans' pleading alleges that, when the original loan transaction closed on March 20, 2009, the lender failed to deliver to them

the correct number of copies of TILA disclosures and notices of cancellation rights.[15]  The Second Amended Complaint further alleges that the lender understated the finance charge because certain loan-related fees "were padded and not bona fide or reasonable." (Doc. 45, ¶ 15.)  On the basis of these purported technical infirmities, the pleading alleges, on March 19, 2012, the Selmans "served a notice of cancelation of their mortgage and CitiMortgage has failed and refused to take the steps necessary to recognize their rescission." (Doc. 45, ¶ 19.)

Plaintiffs endeavor to parlay these factual allegations into the TILA rescission cause of action found at Count Nine.  In that regard, they request an award from CitiMortgage and Fannie Mae that includes the following: (i) statutory and actual damages; (ii) rescission of the loan; and (iii) return of all money paid by the Selmans in connection with the mortgage transaction.  (Doc. 45, at 19.)

Both defendants named in Count Nine argue that dismissal of that cause of action is warranted on limitations grounds.[16]  The text of TILA is clear that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction … notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor." 15 U.S.C. § 1635(f).  Case law has construed this three-year period as a binding statute of repose that cannot be

---

[15]     According to the Second Amended Complaint, "[u]nder Regulation Z §1026.17(d) each of the Selmans was entitled to their own copy of the Truth-in-Lending disclosure and at the loan closing only one copy was provided.  Furthermore, they were each entitled to 2 copies of their Notice of Right-to-Cancel the transaction (a total of 4 copies), however, at the loan closing, they only received 2 copies." (Doc. 45, ¶ 14.)

[16]     In point of fact, CitiMortgage's Rule 12(b)(6) Motion and brief were silent as to Count Nine; however, Fannie Mae's Motion and brief squarely advanced the limitations defense as a basis for dismissal of that claim.  (Doc. 38, at 8-11.)  Moreover, contemporaneously with Fannie Mae's filing, CitiMortgage (which is represented by the same counsel as Fannie Mae) filed a "Motion to Deem Incorporated in its Partial Motion to Dismiss Amended Complaint the Rescission Argument Advanced by Federal National Mortgage Association" (doc. 39).  Because of the court-authorized delay to accommodate consolidated briefing of all Rule 12(b) motions, plaintiffs were not prejudiced or disadvantaged by CitiMortgage's after-the-fact adoption of Fannie Mae's assertion that Count Nine is time-barred.  All parties had a full and fair opportunity to be heard on this limitations issue.  Accordingly, the Court in its discretion **grants** CitiMortgage's Motion to Deem Incorporated the Rescission Argument (doc. 39), and will consider the timeliness of Count Nine with respect to both defendants.

equitably tolled, and has barred plaintiffs from rescinding a loan transaction under § 1635 where suit is not filed within the three-year period. *See, e.g., Beach v. Ocwen Federal Bank*, 523 U.S. 410, 419, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998) (TILA "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run").[17]

Defendants' point is simple: The express allegations of the Second Amended Complaint show that the challenged mortgage loan transaction closed on March 20, 2009. As such, the Selmans' three-year TILA rescission period under § 1635(f) expired on or about March 19, 2012; however, they did not file their Complaint until July 12, 2012, several months after the right to rescind had been extinguished as a matter of law.

The Selmans' response effectively rebuts none of these points. Instead, plaintiffs' brief takes up a different matter, to-wit: That plaintiffs had one year from the March 2012 exercise of rescission rights to file a TILA cause of action for damages based on defendants' inadequate response to their notice of rescission. (Doc. 53, at 20-21.) But a claim for TILA rescission of a mortgage loan and a claim for TILA damages arising from a lender's refusal to rescind a loan are conceptually distinct. *See, e.g., Frazile v. EMC Mortg. Corp.*, 2010 WL 2331429, *4 (11th Cir.

---

[17]     *See also Boone v. JP Morgan Chase Bank*, 2011 WL 5965788, *3 (11th Cir. Nov. 30, 2011) (affirming Rule 12(b)(6) dismissal of TILA rescission claim where plaintiff filed lawsuit almost four years after loan modification, where TILA borrower's "right of rescission expires three years after the consummation of the transaction"); *Sampson v. Washington Mut. Bank*, 2011 WL 4584780, *1 n.3 (11th Cir. Oct. 5, 2011) (TILA's "three-year statute of repose cannot be equitably tolled … and thus bars Sampson's [rescission] claim, which was brought nearly five years after the alleged TILA violation occurred"); *Williams v. Wells Fargo Home Mortg., Inc.*, 2011 WL 395978, *3 (3rd Cir. Feb. 8, 2011) ("consistent with § 1635(f), a legal action to enforce the right must be filed within the three-year period or the right will be completely extinguished") (citation and internal marks omitted); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("section 1635(f) represents an 'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction"); *Bialek v. Vanguard Funding, LLC*, 2010 WL 4342066, *3 (M.D. Fla. Oct. 27, 2010) ("Because Bialek's right to rescind terminated before she filed this suit, these counts are clearly barred."); *Chevy Chase Bank, F.S.B. v. Carrington*, 2010 WL 745771, *2 (M.D. Fla. Mar. 1, 2010) ("TILA plaintiffs must bring their rescission action within the three-year period set forth in" § 1635(f)); *McMillian v. AMC Mortg. Services, Inc.*, 560 F. Supp.2d 1210, 1215 n.8 (S.D. Ala. 2008) ("In the wake of *Beach*, a formidable line of federal decisions has reiterated that rescission claims under § 1635(f) are not subject to equitable tolling."); *Wilson v. JPMorgan Chase Bank, NA*, 2010 WL 2574032, *7 (E.D. Cal. June 25, 2010) ("if the borrower files his or her suit over three years from the date of a loan's consummation, a court is powerless to grant rescission").

June 11, 2010) (when a creditor refuses to act on a borrower's timely exercise of a valid right to rescission, such omission "constitutes a separate violation of TILA, actionable under § 1640" and subject to its own one-year limitations period); *Bialek v. Vanguard Funding, LLC*, 2010 WL 4342066, *3 (M.D. Fla. Oct. 27, 2010) (recognizing and explaining distinction). The net result is that the parties effectively talk past each other in their respective briefs. Defendants do not appear to be contending in their Rule 12(b) motions that the Selmans' TILA claim for damages arising from CitiMortgage's and Fannie Mae's refusal to honor plaintiffs' timely notice of rescission is time-barred and should be dismissed. (To the extent that defendants are so contending, they are mistaken.) Rather, defendants' position is that the Selmans' claim for TILA rescission is barred by the three-year statute of repose. Meanwhile, plaintiffs have advanced no argument and cited no authority that a claim for rescission itself may survive if filed outside the three-year § 1635(f) period, but have instead focused their argument on the timeliness of their damages claim arising from defendants' refusal to rescind the loan.

A great deal of the confusion in the briefing on this point appears to stem from Count Nine's "hybrid" status. Under a fair reading of the Second Amended Complaint, Count Nine requests both actual and statutory damages under 15 U.S.C. § 1640(a) (*i.e.*, damages arising from defendants' failure and refusal to rescind the transaction in March 2012 upon request from plaintiffs) and rescission itself. The latter portion of the claim is time-barred pursuant to the foregoing authorities, but the former is not. Accordingly, CitiMortgage's and Fannie Mae's Rule 12(b) motions will be **granted in part**, and **denied in part** concerning Count Nine. The portion of Count Nine seeking rescission of the loan is **dismissed** as untimely under TILA's three-year statute of repose, but the Selmans may proceed as to the portion of Count Nine seeking money damages for defendants' refusal to rescind the loan in March 2012 upon timely notice of same by the Selmans.

### G.     *Plaintiffs' Unjust Enrichment Claim (Count X).*

The Second Amended Complaint purports to articulate a claim under Alabama law for unjust enrichment against defendants CitiMortgage and ASIC. In particular, Count Ten alleges that these defendants' actions "in over-insuring Plaintiffs' property enable these defendants to reap extra profits, in the form of premiums, kickbacks and commissions, for their own benefit to which they not [*sic*] entitled," with the result being that "the plaintiffs have been injured and damaged and these defendants have been unjustly enriched." (Doc. 45, ¶ 93.)

Defendants seek dismissal of Count Ten on a variety of legal grounds.  It is sufficient for purposes of the pending Rule 12(b)(6) Motions to consider their contention that no cause of action for unjust enrichment is cognizable where, as here, there is an express contract between the parties.  Considerable Alabama decisional authority supports this principle.[18]  Movants correctly point out that the Second Amended Complaint alleges (and indeed, relies on) the existence of (i) an express written mortgage agreement delineating the rights and obligations of CitiMortgage and the Selmans, and (ii) an express written insurance contract delineating the rights and obligations of ASIC and the Selmans.  Thus, both CitiMortgage and ASIC have a compelling argument under Alabama law that express written agreements concerning the same subject matter as the implicit contract underlying the Selmans' unjust enrichment cause of action are fatal to that cause of action, as a matter of law.

Plaintiffs do not respond to this facially meritorious objection.  They offer no basis for turning aside CitiMortgage's and ASIC's well-grounded legal argument that claims for unjust enrichment cannot lie in the presence of express agreements covering the same subject matter.  Accordingly, the Motions to Dismiss will be **granted** as to Count Ten.[19]

---

[18]      *See, e.g., Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So.2d 443, 447 (Ala. 1996) ("This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter."); *Patans Ventures, Inc. v. Williams*, 959 So.2d 115, 117 n.1 (Ala.Civ.App. 2006) (citing learned treatise for proposition that "an action for unjust enrichment cannot lie in the face of an express contract"); *Joiner v. USAA Cas. Ins. Co.*, 2013 WL 84935, *1 n.1 (M.D. Ala. Jan. 8, 2013) ("the unjust enrichment claim is due to be dismissed for failure to state a claim, as there is no dispute that an insurance contract existed and a claim based on an implied contract will not lie where there is an express contract"); *Gould v. Transamerica Life Ins. Co.*, 2012 WL 512667, *3 (S.D. Ala. Feb. 15, 2012) ("it is not possible to have a viable unjust enrichment claim when there is an express contract as to the same subject matter"); *White v. Microsoft Corp.*, 454 F. Supp.2d 1118, 1132-33 (S.D. Ala. 2006) (exploring nature and status of unjust enrichment claims under Alabama law and explaining why they are incompatible with an express contract addressing the same subject matter).

[19]      In so deciding, the Court does not turn a blind eye to the accepted practice of pleading in the alternative, nor does the Court ignore authorities finding that express-contract and unjust-enrichment claims can coexist at the Rule 12(b) stage under certain circumstances.  That reasoning does not save Count Ten because this is not a case in which the existence of an express contract is a disputed question of fact, such that alternative pleading of express- and implied-contract theories of liability would be permissible.  *Cf. Kennedy*, 682 So.2d at 447 ("the law may recognize an implied contract where the existence of an express contract on the same subject (Continued)

### H.      Plaintiffs' Conversion Claim (Count XI).

In Count Eleven of the Second Amended Complaint, the Selmans bring an Alabama claim of conversion against CitiMortgage.  Undergirding that claim is plaintiffs' allegation that "CitiMortgage received funds belonging to Plaintiffs in the amount of at least the monthly payments made in 2012 and, instead of applying them to Plaintiffs' mortgage, converted them to its own use."  (Doc. 34, ¶ 97.)

Alabama law sharply curtails the use of a conversion theory where the item being converted is money.  Indeed, "[t]he Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11ᵗʰ Cir. 2010); *Hensley v. Poole*, 910 So.2d 96, 101 (Ala. 2005) ("This Court has held repeatedly that generally, an action will not lie for the conversion of money unless the money at issue is capable of identification.") (citations and internal marks omitted).  "Money is specific and capable of identification where, for example, it is money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money *rather than to merely deliver a certain sum*."  *Edwards*, 602 F.3d at 1303 (citations and internal quotation marks omitted); *see also Hensley*, 910 So.2d at 101 ("Only when money is 'earmarked' or otherwise identifiable, such as enclosed in a container like a bag or chest, does an action lie for conversion of money.").  "Identifiable amounts of money are one thing, specific money capable of identification is another. … [A]n action for the conversion of money requires the money itself, not just the

---

matter is not proven"); *Sirmon v. Wyndham Vacation Resorts, Inc.*, 2012 WL 4341819, *6 (N.D. Ala. Sept. 18, 2012) ("Although Plaintiffs may ultimately be incapable of recovering quasi-contractual damages on an unjust enrichment theory, this Court will not prevent them from developing the claim through the discovery process.").  Here, the Selmans' pleading specifically alleges the existence of express contracts with CitiMortgage and ASIC covering the same subject matter as the alleged implied contract underlying Count Ten.  More importantly, CitiMortgage and ASIC do not dispute the existence or validity of those agreements; thus, there appears to be no question that these express contracts govern the relevant relationships, thereby obviating the need to invoke the old equitable remedy of unjust enrichment to fill in gaps in the name of equity.  At any rate, the Selmans have never suggested that Count Ten would pass muster under a pleading-in-the-alternative rationale anyway, so this question is not even on the table.

amount of it, to be specific and capable of identification." *Edwards*, 602 F.3d at 1303 (citations omitted).[20]

As CitiMortgage correctly observes, the Second Amended Complaint does not allege facts showing that the converted money was specific and capable of identification, under Alabama law.  By the plain allegations of the pleading, "[c]learly, there is no identifiable coin or bill, and nothing that has been sealed up in a particular letter, 'wrapped up to itself,' or placed in a bag or chest.  There is no evidence that this money was placed in a special account.  It is merely money which was not paid …." *Lewis v. Fowler*, 479 So.2d 725, 727 (Ala. 1985).  That is simply not good enough to state an Alabama claim for conversion.  Absent factual allegations that the money in question was segregated, sequestered or identifiable in some specific way, the Selmans cannot maintain a conversion claim against CitiMortgage based simply on that defendant's failure to deliver a certain sum that plaintiffs contend should have been delivered. *See, e.g., Johnson v. Life Ins. Co. of Alabama*, 581 So.2d 438, 443 (Ala. 1991) ("an action alleging conversion of money lies only where there is an obligation to deliver the specific pieces of money in question or money that has been specifically sequestered, rather than a mere obligation to deliver a certain sum"); *Lewis*, 479 So.2d at 727 ("When there is no obligation to return the identical money, but only a relationship of debtor or creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor.").

Count Eleven fails to allege facts showing that CitiMortgage converted "specific pieces of money" that it was obligated to pay for the Selmans' benefit; therefore, that cause of action is properly **dismissed** for failure to state a claim under Alabama law.[21]

---

[20]     To put it in concrete terms, Alabama law recognizes a conversion claim for money only in circumstances like the following:  A gives B a $100 bill marked with a red "x" and instructs B to give that particular bill to C.  B pockets the $100 bill and never gives it to C.  A may properly sustain a conversion claim against B under Alabama law.  If, however, A gives B a check for $100 and tells B to give that amount to C, but B never does so, no conversion claim will lie because that claim would relate only to identifiable amounts of money, rather than specific money capable of identification.  Our case is far closer to the latter scenario than to the former.

[21]     Plaintiffs' counterargument is that "the funds were earmarked to be paid either against the outstanding balance of the loan or for their taxes and insurance."  (Doc. 53, at 16.) But there are no allegations that plaintiffs' funds were sealed in a bag or chest or stored in a special account, much less that the bills were physically marked in some way.  Stated differently, (Continued)

## I.      *Plaintiffs' TILA Section 1639f Claim (Count XIII).*

In Count Thirteen, the Selmans assert that CitiMortgage and Fannie Mae breached TILA obligations under 15 U.S.C. § 1639f to credit their account with monthly payments in a prompt fashion.[22]  According to the Second Amended Complaint, Fannie Mae "is liable for damages for each payment that CitiMortgage did not properly apply" prior to the March 29, 2012 assignment of the loan from Fannie Mae to CitiMortgage.  (Doc. 45, ¶ 113.)  Plaintiffs likewise contend that "CitiMortgage is liable for not applying payments made after the assignment."  (*Id.*)

Defendants allege, and plaintiffs do not contest, that any civil action the Selmans might bring for violations of § 1639f must proceed under 15 U.S.C. § 1640(a), which is TILA's civil liability provision.  That section reads, in pertinent part, as follows:  "[A]ny *creditor* who fails to comply with any requirement imposed under this part … with respect to any person is liable to such person."  15 U.S.C. § 1640(a) (emphasis added).  "Creditor" is a defined term in TILA, as follows:  "The term 'creditor' refers only to a person who both (1) regularly extends … consumer credit …, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(g).  Fannie Mae and CitiMortgage both argue that they do not meet the statutory definition of "creditor" because they are not "the person to whom the debt arising from the consumer credit

_____

the Selmans' claim is not that CitiMortgage failed to deliver particular bills or pieces of currency to their hazard insurer, but that CitiMortgage failed to pay an identifiable sum on the Selmans' behalf.  CitiMortgage was supposed to pay a specific sum to the Selmans' insurer, not specific bills or monies.  For all the plaintiffs and the hazard insurer cared, CitiMortgage could have paid over any bills to the insurer, as long as it paid the proper amount.  Nothing about this claim relates to segregated, sequestered bills or currency in CitiMortgage's custody; therefore, it does not satisfy the legal prerequisites for a viable conversion claim under the idiosyncrasies of Alabama law.

[22]      That section reads, in part, as follows:  "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency."  15 U.S.C. § 1639f(a).

transaction is initially payable on the face of the evidence of indebtedness." That "person" is RBC Bank (USA), which is not a party to this action.[23]

Defendants' position with respect to Count Thirteen is straightforward: Section 1640(a) of TILA authorizes civil actions to be filed only against "creditors," which are defined as the person to whom the debt arising from the Selmans' mortgage loan was initially payable on the face of the Mortgage. Neither Fannie Mae nor CitiMortgage is that person; therefore, they reason, they cannot be "creditors" within the meaning of § 1640(a) and cannot be liable under TILA for a violation of § 1639f. In response, plaintiffs do not rebut these arguments. They do not show that § 1640(a) can reasonably be construed as providing for servicer liability. They do not show that CitiMortgage or Fannie Mae reasonably fall within the statutory definition of "creditor" for purposes of § 1640(a). And they do not identify any other provision of TILA that might reasonably be viewed as giving rise to a private right of action for violations of § 1639f.[24] Under the circumstances, the Motions to Dismiss of CitiMortgage and Fannie Mae will be **granted** with respect to Count Thirteen, and that cause of action will be **dismissed**.

---

[23]    The Second Amended Complaint does not name the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the Mortgage, nor is a copy of the Mortgage appended thereto. Nonetheless, applicable law provides that federal courts evaluating Rule 12(b)(6) motions may consider an exhibit "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). All of these requirements are satisfied here; therefore, the Court properly notes that the initial payee of the Mortgage was RBC Bank (USA), not Fannie Mae and not CitiMortgage. (*See* doc. 17, Exh. A, at 1 & ¶ 1.)

[24]    At best, plaintiffs have offered a vague, shadowy allegation that liability for the § 1639f violation can be pinned on CitiMortgage and Fannie Mae by operation of § 1641. *See* Doc. 53, at 20 ("Since CitiMortgage and Fannie Mae were the creditor –assignee during those time periods they are both libel [*sic*] for TILA damages pursuant to TILA section 1641.") But plaintiffs have not explained, and the Court does not perceive, how the statutory prerequisites for assignee liability under § 1641(a) are or might be satisfied here. This Court cannot and will not fill in the blanks for an argument that plaintiffs have not developed. *See, e.g., M.R. v. Board of School Com'rs of Mobile County*, 2012 WL 3778283, *4 n.5 (S.D. Ala. Aug. 30, 2012) ("Federal courts do not develop parties' legal arguments for them."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted).

III.    **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      The Motions to Dismiss (docs. 16, 37, 49) are **granted in part**, and **denied in part**;

2.      The following claims and causes of action set forth in the Second Amended Complaint are **dismissed without prejudice**:  (i) all claims seeking relief for the force-placement of hazard insurance on the Selmans' residence, or for alleged excessive coverage amounts, commissions or kickbacks in connection with same; (ii) Count One (negligence); (iii) Count Two (wantonness); (iv) Count Four (wrongful foreclosure); (v) the portion of Count Six (RESPA) alleging a violation of 12 US.C. § 2605(e); (vi) Count Seven (breach of fiduciary duty); (vii) Count Eight (libel/slander); (viii) the portion of Count Nine (TILA rescission) seeking rescission of the mortgage loan; (ix) Count Ten (unjust enrichment); (x) Count Eleven (conversion); (xi) Count Twelve (fraud/conspiracy); and (xii) Count Thirteen (TILA § 1639f);[25]

3.      CitiMortgage's Motion to Deem Incorporated (doc. 39) is **granted**;

4.      As a result of these rulings, plaintiffs no longer have any pending claims or causes of action against defendant American Security Insurance Company.  The Clerk of Court is directed to **terminate** ASIC as a party defendant in this matter;

5.      This action will proceed with respect to the following claims asserted by the Selmans against defendant CitiMortgage, Inc.:  (i) Count Three (breach of mortgage agreement), except for allegations relating to force-placed insurance; (ii) Count Five (declaratory/injunctive relief), except for allegations relating to force-placed insurance; (iii) the portion of Count Six (RESPA) alleging a violation of 12 U.S.C. § 2605(g); (iv) the portion of Count Nine (TILA rescission) seeking damages for CitiMortgage's failure and refusal to rescind the mortgage

---

[25]     Defendants have asked that these claims be dismissed with prejudice; however, the Court cannot at this time definitively foreclose the possibility that the Selmans may be able to replead certain of these causes of action in a manner that does state an actionable claim.  For that reason, dismissal is **without prejudice**.

loan; and (v) Count Fourteen (FDCPA).  The above-described portion of Count Nine also remains active as to defendant Federal National Mortgage Association;

6.      The remaining defendants must file answers to the Second Amended Complaint on or before **March 19, 2013**; and

7.      Pursuant to Magistrate Judge Bivins' Endorsed Order (doc. 42) entered on October 11, 2012, the parties must meet and file their joint Rule 26(f) report within seven days of this Order, or on or before **March 12, 2013**.


DONE and ORDERED this 5th day of March, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE